```
_____ FILED          _____ RECEIVED
_____ ENTERED        _____ SERVED ON
                  COUNSEL/PARTIES OF RECORD

            JAN 2 0 2011

        CLERK US DISTRICT COURT
          DISTRICT OF NEVADA
BY: _____ DEPUTY
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ANITA VALENZUELA, | ) | |
| Plaintiff, | ) ) ) | 3:10-cv-00502-RCJ-VPC |
| vs. | ) ) | |
| LIME FINANCIAL SERVICES, LTD et al., | ) ) | **ORDER** |
| Defendants. | ) ) | |

This is a standard foreclosure case involving one property.  The Complaint is a forty-three-page MERS-conspiracy-type complaint listing eleven causes of action.  The case is not part of MDL Case No. 2119.  Three motions are pending before the Court: a motion to remand, a motion to dismiss, and a motion for summary judgment.

I.  **THE PROPERTY**

Plaintiff Anita Valenzuela gave a $340,000 mortgage to Lime Financial Services, Ltd. ("Lime") to purchase a home at 7272 Offenhauser Dr., Reno, NV 89511 (the "Property").  (Deed of Trust ("DOT") 1–3, July 28, 2006, ECF No. 1-2).  First Centennial Title Company of Nevada ("First Centennial") was the trustee. (*See id.*).  As of December 12, 2009, she had defaulted in the amount of $26,093.71. (*See* NOD 1, Dec. 9, 2009, ECF No. 7-4).  LSI Title Agency ("LSI"), as agent for National Default Servicing Corp. ("NDSC"), as agent for Litton Loan Servicing ("Litton") filed the NOD. (*See id.* 2).  Litton, as agent for Bank of America, then purported to

substitute NDSC as trustee on January 26, 2010. (*See* Substitution of Trustee, Jan. 26, 2010, ECF No. 7-3).  The Property was sold by NDSC to Bank of America, as trustee for a mortgage-backed security, on May 26, 2010. (Trustee's Deed, June 2, 2010, ECF No. 7-6).

MERS, as nominee for Lime, had purported to transfer "all beneficial interest under [the DOT]" to Bank of America on January 26, 2010. (*See* Assignment, Jan. 26, 2010, ECF No. 7-2).  Regardless of the language in the DOT, MERS is not in fact the beneficiary because it does not own the debt.  MERS also does not have the ability to transfer the interest in the loan without more evidence of its agency on behalf of Lime in this regard than being named as nominee on the DOT.  In other words, based on the evidence produced, the DOT remains with Lime at this point, or with whatever entity currently holds the note, by operation of law.  Bank of America may have a worthless piece of paper if it only has an "assigned" deed of trust without having had the note that the deed of trust secures negotiated to it. *See Rodney v. Ariz. Bank*, 836 P.2d 434, 436 (Ariz. App. 1992) (quoting *Hill v. Favour*, 52 Ariz. 561, 568 (1938)); *Ord v. McKee*, 5 Cal. 515, 515 (1855) ("A mortgage is a mere incident to the debt which it secures, and follows the transfer of the note with the full effect of a regular assignment.").  MERS purported in the "Assignment of Deed of Trust" to transfer the "beneficial interest" to Bank of America for value, which would in fact give Bank of America the right to enforce the note even without negotiation, *see* Nev. Rev. Stat. § 104.3203(2), but MERS likely did not have the ability to make such a transfer.[1]  The foreclosure may have been statutorily invalid both because NDSC filed the NOD before it was substituted as trustee by Bank of America and before MERS purported to transfer the beneficial interest to Bank of America, both of which would be improper even assuming Bank of America eventually had the beneficial interest via the transfer from Lime by MERS.

---

[1]Defendants could cure this defect via an affidavit from Lime indicating that Lime specifically commanded MERS to transfer Lime's interest in the note to Bank of America, or that MERS' agency for Lime extended this far as a general matter.

1      The only meritorious claim is for injunctive relief based on a violation of NRS section

2 107.080(2)(c). The "quiet title" claim is redundant with that for "declaratory judgment," *see*

3 *Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948), and the claim for injunctive relief obviates the

4 need for a separate declaration.

5 **II.     ANALYSIS**

6     **A.     Motion to Remand**

7      The Court denies the motion to remand, as there is federal-question jurisdiction. Plaintiff

8 has pled a cause of action for a violation of NRS section 649.370, which incorporates the

9 standards of the Fair Debt Collection Practices Act ("FDCPA").

10      First, section 649.370 creates no private cause of action,[2] so the claim that refers to

11 FDCPA necessarily relies directly on the federal cause of action.

12      Second, even if the Court found an implied state cause of action, it would necessarily

13 require substantial interpretation of federal law, because a violation of the state statute is defined

14 purely by reference to FDCPA. *See Mesi v. Wash. Mut. F.A.*, No. 3:09-CV-582 JCM (VPC),

15 2010 WL 3025209, at *2 (D. Nev. July 30, 2010) (Mahan, J.). *Contra Atkinson v. Homecomings*

16 *Fin., LLC*, No. 3:10-cv-00418-LRH-VPC, 2010 WL 3271741, at *2 (D. Nev. Aug. 16, 2010)

17 (Hicks, J.) ("[C]ontrary to Defendants' position, the act defines a state claim that is separate from

18 its federal counterpart. Although a federal regulation is expressly noted in the Nevada statute,

19 the reference to the federal act only provides a framework for determining the type of claim that

20 can be brought under the state statute."). The Court respectfully believes that the *Mesi* case is

21 better reasoned. Although an appropriately drafted state statute could incorporate federal

22 standards in such a way that a violation of federal standards would be sufficient, but not

23

24     [2]Neither "damages," "cause of action," nor "attorney's fees" appear anywhere in Chapter
649. The Chapter provides only for criminal penalties or administrative fines. *See* Nev. Rev.

25 Stat. §§ 649.435, 649.440.

1   necessary, to constitute a violation of the state statute, in the present case the Nevada Legislature

2   has made the reach of section 649.370 coextensive with FDCPA and its attendant regulations.

3   *See* Nev. Rev. Stat. § 649.370 ("A violation of any provision of the federal Fair Debt Collection

4   Practices Act, 15 U.S.C. §§ 1682 *et seq.*, or any regulation adopted pursuant thereto, shall be

5   deemed to be a violation of this chapter."). The *Atkinson* court reasoned that because the Nevada

6   Supreme Court had resolved other sections of Chapter 649 without reference to federal law, a

7   section 649.370 claim could be resolved without the substantial interpretation of federal law. *See*

8   *Atkinson*, 2010 WL 3271741, at *2 (citing *State v. Hartford Accident & Indem. Co.*, 477 P.2d

9   592 (Nev. 1970)). But *Hartford* did not involve the resolution of any section of Chapter 649 that

10  made reference to federal law, much less section 649.370, which was enacted thirty-seven years

11  after *Hartford* was decided. *See* 2007 Nev. Stat. 2500; *Hartford*, 477 P.2d at 593 (interpreting

12  former section 649.080, which did not rely on any federal law). The fact that some sections of

13  Chapter 649 can be applied without interpreting federal law tells us nothing about whether any

14  other particular section therein can be. Plaintiff has not pled any violation of Chapter 649 except

15  section 649.370, which is by its text coextensive with FDCPA. Therefore, any claim under

16  section 649.370 necessarily requires the substantial interpretation of federal law, and there would

17  be federal-question jurisdiction even if a private cause of action lied under Chapter 649 such that

18  Plaintiff did not need to rely on FDCPA directly.

19      Federal-question jurisdiction can be based purely on a state claim if its resolution

20  necessarily requires the construction of federal law:

21          The rule is well settled that a state claim "arises under" federal law "if the
            complaint, properly pleaded, presents a substantial dispute over the effect of federal
22          law, and the result turns on the federal question." *Guinasso v. Pacific First Fed. Sav.
            & Loan Ass'n*, 656 F.2d 1364, 1365–66 (9th Cir. 1981), *cert. denied*, 455 U.S. 1020,
23          102 S. Ct. 1716, 72 L. Ed. 2d 138 (1982). The "vast majority of cases brought under
            the general federal-question jurisdiction of the federal courts are those in which
24          federal law creates the cause of action[,]" *Merrell Dow Pharmaceuticals Inc. v.
            Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 3232, 92 L. Ed. 2d 650 (1986), but
25          a case may also arise under federal law "'where the vindication of a right under state

1   law necessarily turn[s] on some construction of federal law.'" *Id.* (quoting *Franchise*
2   *Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S. Ct. 2841,
    2846, 77 L. Ed. 2d 420 (1983)).

3   *Berg v. Leason*, 32 F.3d 422, 423 (9th Cir. 1994). In cases such as the present one, where the

4   state claim directly incorporates the substance of federal law, *see* Nev. Rev Stat. § 649.370, and

5   where the state claim raises no federal constitutional issues, federal-question jurisdiction exists

6   only if the federal law that is incorporated into the state claim provides an independent federal

7   claim:

8           In *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct.
            3229, 92 L. Ed. 2d 650 (1986), the Court considered in detail the principles of
9           removal jurisdiction when applied to a well-pleaded complaint that relies on a state
            cause of action which incorporates federal law as one of the elements of recovery.
10          The Court held that in such a case, the state claim does not involve a substantial
            federal question unless the federal law incorporated in the state cause of action
11          provides a federal private right of action for its violation. *Id.* 106 S. Ct. at 3237; *see*
            *also Utley v. Varian Assoc., Inc.*, 811 F.2d 1279 (9th Cir.) (applying *Merrell Dow*),
12          *cert. denied*, 484 U.S. 824, 108 S. Ct. 89, 98 L. Ed. 2d 50 (1987).

13  *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1394 n.4 (9th Cir. 1988). The FDCPA provides

14  a private right of action. *See* 15 U.S.C. § 1692k. If NRS section 649.370 contained additional

15  substantive bases for liability apart from FDCPA, then such bases of liability could be invoked

16  without creating federal-question jurisdiction. But section 649.370 refers exclusively and

17  coextensively to FDCPA for its substance and provides no basis for liability apart from that

18  provided for in FDCPA, under which a private, federal right of action lies. The Court therefore

19  finds that even if a private cause of action lied under section 649.370 (none does), such a claim

20  would support federal-question jurisdiction. *See Ethridge*, 861 F.2d at 1394 n.4.

21          **B.      Motions to Dismiss and for Summary Judgment**

22          Rather than responding to the motions, Plaintiff's counsel, as he typically does in these

23  cases, has filed a "Notice of Intent to Withhold Response." This constitutes consent to granting

24  the motions. Local R. Civ. Prac. 7-2(d). Counsel has no authority to institute a partial stay of a

25  case unilaterally, which is what these notices essentially purport to do. And the requirement to

1  file an opposition is not a "burden" imposed by a potentially improper removal, as counsel has

2  argued in other similar cases, because Defendants surely would have filed the same dispositive

3  motions had the case not been removed.  In fact, Plaintiff would only have had ten (10) days to

4  respond to such motions in state court before failure to respond constituted consent to granting

5  them, whereas he had fifteen (15) days to respond in this Court. *Compare* Nev. Dist. Ct. R.

6  13(3), *with* Local R. Civ. Prac. 7-2(b).  Removal therefore had the effect of giving Plaintiff an

7  additional five days to respond to these inevitable motions, in addition to the delay in

8  Defendants' filing of the motions created by the removal process itself.  There is simply no

9  legitimate excuse for failing to substantively respond.  In addition to constituting consent to

10 grant the motions to dismiss under Local Rule 7-2(d), this willful failure to respond to

11 dispositive motions might violate Nevada Rule of Professional Conduct 1.1, which requires

12 competent representation.

13        The typical complaint in these cases involves a defaulted mortgage and a clean

14 foreclosure.  In a minority of cases, such as this one, the foreclosure appears statutorily defective

15 because the foreclosing entity, i.e., the entity that filed the NOD, was not the trustee, beneficiary,

16 or agent of one of those entities when it filed the NOD. *See* Nev. Rev. Stat. § 107.080(2)(c).  In

17 such cases, a preliminary injunction is appropriate to stop foreclosure where the mortgagor is

18 willing to do equity by making payments during the preliminary injunction period.  The Court

19 has in fact issued preliminary injunctions in such cases.  Also, a permanent injunction

20 invalidating a foreclosure or even avoiding a foreclosure sale would be appropriate in a case

21 where a mortgagor were willing to do equity by curing the entire default.  Such a case has not yet

22 presented itself in this Court.

### CONCLUSION

23

24        IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 3) is DENIED.

25        IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 16) and the Motion

1  for Summary Judgment (ECF No. 7) are GRANTED in part and DENIED in part.  All claims are

2  dismissed except the claim for injunctive relief due to statutorily defective foreclosure.

3       IT IS FURTHER ORDERED that Defendants will not transfer or lease the Property or

4  take any action to evict Plaintiff from the Property for one-hundred (100) days.  During this

5  period, Plaintiff will make full, regular monthly payments under the note every thirty (30) days,

6  with the first payment due ten (10) days after the date of this order.  The amount of each

7  payment will be according to the monthly payment as of the date of the NOD.  Failure to make

8  monthly payments during the injunction period will result in a lifting of the injunction.  Plaintiff

9  need not pay late fees or cure the entire amount of past default at this time but may be required in

10  equity to cure the entire past default as a condition of any future permanent injunction voiding

11  the trustee's sale.

12       IT IS FURTHER ORDERED that during the injunction period the parties will engage in

13  the state Foreclosure Mediation Program, if available.  If not available, Defendants will conduct

14  a private mediation with Plaintiff in good faith.  The beneficiary must send a representative to

15  the mediation with actual authority to modify the note, although actual modification is not

16  required.  Plaintiff will provide requested information to Defendants in advance of the mediation

17  in good faith.

18       IT IS SO ORDERED.

19

20  Dated this 19th day of January, 2011.

21

22                                         ROBERT C. JONES
                                        United States District Judge
23

24

25